UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRILL ROSS,<br><br>    Petitioner,<br><br>v.<br><br>FRANK FOULK, Warden,<br><br>    Respondent. | CASE NO. 1:15-cv-00674-SKO HC<br><br>ORDER DENYING PETITION<br>FOR WRIT OF HABEAS CORPUS<br><br>(Doc. 1) |

Petitioner, Terrill Ross, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner presents ineffective assistance of counsel as his ground for habeas corpus relief. Having reviewed the record and applicable law, the Court will deny the petition.

**I.    Procedural and Factual Background[2]**

On September 22, 2012, while incarcerated at Corcoran State Prison for a crime unrelated to the instant case,[3] Tracy Henry ("Ms. Henry") visited Petitioner.[4] Ms. Henry removed a black

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.
[2] Factual information is derived from *People v. Ross*, (Cal. App. April 30, 2014) (No. F066279), and a review of the record.
[3] Petitioner was convicted of murder on April 12, 1999, in Los Angeles Superior Court. The record does not provide information about his term of incarceration for the murder conviction.
[4] The record does not provide any further information about Tracy Henry or her relationship to Petitioner.

1

bag from her clothing and placed it in Petitioner's clothing. Petitioner tried to conceal the bag in his rectal cavity; however, Petitioner was detained by prison authorities.[5] Prison authorities determined the black bag contained four separately wrapped cellophane bags containing heroin and weighing a total of 123 grams.

On October 5, 2012, Petitioner was charged with (1) conspiracy to furnish a controlled substance in a state prison (Cal. Penal Code § 182(a)(1)); (2) possession of heroin in state prison (Cal. Penal Code § 4573.8); (3) possession of heroin for sale (Cal. Health & Safety Code § 11351), with an enhancement for possession of over 14.25 grams (Cal. Health & Safety Code § 11325.5(1)); (4) offer to sell heroin (Cal. Health & Safety Code § 11352(a)), with an enhancement for selling or offering to sell more than 14.25 grams of heroin (Cal. Health & Safety Code § 11352.5(2)); and (5) resisting a peace officer (Cal. Penal Code § 148(a)(1)). The charging document also alleged that Petitioner had four prior strike convictions pursuant to the Three Strikes Law (Cal Penal Code §§ 667(b)-(i), 1170.12 (a)-(d)).[6]

On October 25, 2012, Petitioner entered into a plea agreement and pled guilty to conspiracy to furnish a controlled substance in a state prison (Cal. Penal Code § 182(a)(1)), and admitted a prior strike conviction. Petitioner entered his plea with the understanding that the remainder of the charges would be dismissed and he would be sentenced to a stipulated term of eight years in state prison, consecutive to the term he was already serving.[7]

---

[5] The record does not indicate how the prison authorities found the bags on Petitioner.
[6] California Penal Code § 667 states:

> any person convicted of a serious felony who previously has been convicted of a serious felony . . ., shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately.

(Cal. Penal Code § 667(a)(1). "It is the intent of the Legislature in enacting [the law] to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of one or more serious and/or violent felony offense." *Id.* at § 667(b). The record reflects that on April 12, 1999, Petitioner was convicted of murder and on April 12, 1991, Petitioner was convicted of residential robbery, residential burglary, and assault with a firearm on April 12, 1991.
[7] Petitioner was facing a maximum of life in prison based on the charges.

2

During the plea colloquy, the trial court reviewed the terms of the plea agreement with Petitioner, as well as the consequences of the plea, including the constitutional rights Petitioner would waive by entering the plea. The trial court also informed Petitioner of the possible sentence if Petitioner chose to take his case to trial. Petitioner told the court that he understood the plea agreement and did not have any questions. Petitioner's defense counsel informed the court that he had reviewed the plea agreement and the consequences of the plea with Petitioner.

Following the entry of his plea, the Court sentenced Petitioner to four years in state prison, which was doubled to eight years due to the prior strike conviction. The parties also stipulated to the minimum state prison restitution fines and the trial court imposed a $240 fine (Cal. Penal Code 1202.4); a $40 court security fee; and a $30 criminal conviction assessment.[8]

On December 4, 2012, Petitioner appealed his conviction to the California Court of Appeal for the Fifth Appellate District ("Court of Appeal").

On January 10, 2013, while his appeal was pending, Petitioner filed a Petition for Writ of Habeas Corpus with the Court of Appeal. In his habeas corpus petition, Petitioner alleged counsel was ineffective, had inappropriate side-bar conversations with the trial court and prosecutor,[9] coerced Petitioner to take the plea agreement, failed to explain the terms of the plea agreement, and failed to represent Petitioner in a competent manner. On January 17, 2013, the Court of Appeal denied the petition for habeas corpus without prejudice, finding "[t]he petition is conclusory and unsupported by an adequate record. Petitioner has failed to exhaust his remedy of first seeking extraordinary relief in the trial court." *In re Terrill Ross*, (Cal. App. Jan. 17, 2013) (F066427).

---

[8] The court could have imposed a fine up to $30,000.
[9] The transcript from the plea hearing indicates Petitioner's counsel and the prosecutor approached the bench due to confusion over the case number for Petitioner's previous murder case.

3

On February 5, 2013, Petitioner's appointed appellate counsel filed an opening brief that summarized the facts of the case, raised no issues, and requested the appellate court review the record independently pursuant to *People v. Wende*, 25 Cal. 3d 436 (1979).[10] On February 8, 2013, the Court of Appeal invited Petitioner to submit his own briefing on any issues he believed the appellate court should review. On April 25, 2013, Petitioner filed a Supplemental Brief with the Court of Appeal, alleging the same ineffective assistance of counsel arguments as in his petition for habeas corpus filed with the Court of Appeal. On April 30, 2014, the Court of Appeal rejected Petitioner's claims, holding "[t]here is nothing in the record to support any of [Petitioner's] allegations concerning the competency of his trial counsel." *People v. Ross*, (Cal. App. April 30, 2014) (No. F066279), at 4.

On December 15, 2014, Petitioner filed a Petition for Writ of Habeas Corpus with the Supreme Court of the State of California. Petitioner alleged that his plea was the result of coercion and ineffective assistance of counsel. On February 18, 2015, the Supreme Court summarily denied Petitioner's habeas petition.

Petitioner filed his petition for writ of habeas corpus in the Sacramento Division of the United States District Court for the Eastern District of California on April 22, 2015.[11] The Case was transferred to this Court on May 1, 2015. Respondent filed a response on October 23, 2015,

---

[10] Appointed appellate counsel is required to prepare a brief for the appellate court. *People v. Wende*, 25 Cal. 3d 436, 440 (1979) (citing *People v. Feggans*, 67 Cal. 2d 444 (1967)).

> The brief must set forth a statement of the facts . . ., discuss the legal issues . . ., and argue all issues that are arguable. If counsel concludes that there are no arguable issues and the appeal is frivolous, he may limit his brief to a statement of the facts and applicable law.

*Id.* In *Wende*, the California Supreme Court held "whenever appointed counsel submits a brief which raises no specific issues," the appellate court must review the entire record.

[11] Petitioner is challenging his conviction from Kings County Superior Court. Kings County is part of the Fresno Division of the United States Court for the Eastern District of California. *See* Local Rule 120(d). Venue for a habeas action is proper in either the district of confinement or the district of conviction. 38 U.S.C. § 2241 (d). In a state with multiple federal districts, the District Court of the district in which a petitioner is confined may, in its discretion, transfer a petition concerning conviction and sentencing to the district in which the petitioner was convicted and sentenced.

4

and Petitioner filed a reply on December 9, 2015.

## II. Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*,

538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

**III.    The State Court Did Not Err in Denying Petitioner's Ineffective Assistance of Counsel Claims.**

Petitioner argues that he received ineffective assistance of counsel because his trial attorney coerced him into taking the plea agreement and failed to explain the terms of the plea agreement. (Doc. 1 at 5.) Petitioner also maintains that his attorney failed to investigate his claims that, at the time he pled guilty, he was on medication for post-traumatic stress disorder and under a clinician's care in the prison mental health unit. *Id.* Respondent contends it was not

objectively unreasonable for the Court of Appeal to reject Petitioner's claims because the record does not support Petitioner's allegations. (Doc. 17 at 4.)

### a. **Standard of Review for Ineffective Assistance of Counsel Claims**

The purpose of the Sixth Amendment right to counsel is to ensure that the defendant receives a fair trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). "[T]he right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" at the time of trial and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The *Strickland* test requires Petitioner to establish two elements: (1) his attorney's representation was deficient; and (2) prejudice as a result of such deficient performance. Both elements are mixed questions of law and fact. *Id.* at 698.

These elements need not be considered in order. *Id.* at 697. "The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* If a court can resolve an ineffectiveness claim by finding a lack of prejudice, it need not consider whether counsel's performance was deficient. *Id.*

Establishing a state court's application of *Strickland* was unreasonable under § 2254 is difficult because the standards under *Strickland* and § 2254 are both "highly deferential." *Harrington v. Richter*, 562 U.S. 86, 106 (2011) (quoting *Strickland*, 466 U.S. at 689). "[W]hen the two apply in tandem, review is 'doubly' so." *Id*. (quoting *Knowles v. Mirzayance*, 556 U.S.

111, 123 (2009)). In the habeas context, under § 2254, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### b. **Standard of Review for Ineffective Assistance of Counsel During Plea Proceedings**

The *Strickland* test applies to challenges of guilty pleas based on a claim for ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The first prong of the test, deficient representation by counsel, is the same. *Id*. The second prong, the prejudice requirement, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id*. To satisfy the prejudice prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. "Deference to the state court's prejudice determination is all the more significant in light of the uncertainty inherent in plea negotiations." *Premo v. Moore*, 562 U.S. 115, 129 (2011).

### c. **State Court of Appeal Opinion**

The California Court of Appeal began its review of Petitioner's claims by discussing the plea proceedings:

> The trial court reviewed the terms of the plea agreement with [Petitioner] as well as the consequences of the plea. The court asked [Petitioner] if he understood the plea agreement and had any questions. [Petitioner] replied that he understood the terms of the plea agreement and had no questions. Defense counsel told the court that he reviewed the consequences of the plea with [Petitioner] as well as [Petitioner's] potential defenses. The court advised [Petitioner] of his constitutional rights, which [Petitioner] waived . . . . [Petitioner] further waived his right to a preliminary hearing.

(Lodged Doc. 5 at 2.)

The Court of Appeal analyzed Petitioner's ineffective assistance of counsel claims, and determined:

8

> [t]here is nothing in the record to support any of [Petitioner's] allegations concerning the competency of his trial counsel. [Petitioner] has failed to demonstrate that his trial counsel's representation was below professional standards or that he was prejudiced by counsel's alleged ineffective representation.
>
> After independent review of the record, we have concluded there are no reasonably arguable legal or factual issues.

*Ross*, (No. F066279), at 4.

### d. The State Court Did Not Err in Rejecting Petitioner's Ineffective Assistance of Counsel Claim

Petitioner alleges that his counsel was ineffective at the plea proceedings, because he incorrectly advised Petitioner of the consequences of the plea. (Doc. 1 at 5.) Petitioner states that counsel told him that he would be subject to a $35,000 fine and a life sentence if he did not take the plea agreement. *Id*. Petitioner also alleges that, at the time of the plea agreement, he was taking medication for post-traumatic stress disorder, under the care of the prison mental health unit, and not "in his right state of mind." *Id*.

During the plea colloquy, the court advised Petitioner that the maximum punishment that Petitioner would face if he went to trial was a life term. (Lodged Transcript at 4.) The court also informed Petitioner that, instead, under the terms of the plea agreement, he would receive an eight year sentence. *Id*. at 3. Petitioner stated that he understood the terms of the plea and did not have any questions about it. *Id*. The court instructed Petitioner that the court could impose a fine of up to $30,000. *Id*. at 7. Petitioner acknowledged that he understood the court's instructions and accepted the plea freely and voluntarily. *Id*. at 8.

Statements made by "the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

//

There is nothing in the record to suggest Petitioner did not understand the charges against him or the consequences of pleading guilty. Petitioner stated on several occasions during the plea colloquy that he understood the charges and the plea agreement and did not have any questions. Further, the Court clearly advised Petitioner that he could receive a life sentence if he went to trial, but would instead receive an eight year sentence under the plea agreement. Contrary to Petitioner's claim, Petitioner's counsel correctly advised him that he was facing a life term and $35,000 fine if he went to trial versus entering the plea agreement. Consequently, the Court of Appeal's determination that counsel was not ineffective was neither contrary to, nor involved an unreasonable application, of federal law.

Petitioner's argument that his counsel was ineffective because Petitioner was not in the "right state of mind" to plead guilty is also unavailing. "When counsel has reason to question his client's competence to plead guilty, failure to investigate further may constitute ineffective assistance of counsel." *United States v. Howard*, 381 F.3d 873, 881 (9th Cir. 2004) (citing *Rohan v. Woodford*, 334 F.3d 803, 818 (9th Cir. 2003) ("Whether trial counsel were constitutionally ineffective [for failing to pursue a competency hearing] may depend on their interactions with [Petitioner]. The more obvious his incompetence at the time, the more likely that they were deficient for failing to recognize it."); *Douglas v. Woodford*, 316 F.3d 1079, 1085 (9th Cir. 2003) ("Trial counsel has a duty to investigate a defendant's mental state if there is evidence to suggest that the defendant is impaired.")).

In the instant case, there is no evidence in the record to suggest that Petitioner told counsel about his mental health concerns. Nor does Petitioner allege that counsel had a reason to question his mental condition. During the plea colloquy, Petitioner was able to answer the judge's questions and stated that he understood the proceedings. Counsel was not obligated to investigate an issue of which he was not aware at the time of the plea hearing.

Even assuming counsel provided deficient representation, Petitioner cannot show he suffered any prejudice. To satisfy the prejudice prong, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. Petitioner does not allege that but for counsel's performance he would have insisted on going to trial. Petitioner, instead, contends that a more effective attorney would have "held out" until the preliminary hearing or trial "for a better plea deal." (Doc. 19 at 3.) Petitioner cannot show that he was prejudiced by counsel's deficient performance; consequently, Petitioner cannot satisfy either prong of the *Strickland* test.

Based on the record, the Court of Appeal's determination that Petitioner "failed to demonstrate that his trial counsel's representation was below professional standards or that he was prejudiced by counsel's alleged ineffective representation" was neither contrary to, nor involved an unreasonable application, of federal law. *Ross*, (No. F066279), at 4.

## IV. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)  (1) Unless a circuit justice or judge issues a certificate of

appealability, an appeal may not be taken to the court of appeals from—

  (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

  (B) the final order in a proceeding under section 2255.

 (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

 (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court should decline to issue a certificate of appealability.

**V.**   **Conclusion**

Based on the foregoing, the Court hereby DENIES with prejudice the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and declines to issue a certificate of appealability. The Clerk of the Court is directed to enter judgment for the Respondent.

IT IS SO ORDERED.

12

Dated: **December 21, 2017**            /s/ *Sheila K. Oberto*
                                   UNITED STATES MAGISTRATE JUDGE